IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FREDERICK LUSTER, and            :
ELIZABETH DUKE on behalf of      :
themselves and all others similarly :
situated,                        :
                                 :
        Plaintiffs,              :          CIVIL ACTION NO.
                                 :          1:15-CV-0154-LMM
v.                               :
                                 :
PREMIER BANKCARD, LLC,           :
                                 :
        Defendant.               :
                                 :

## ORDER

This case comes before the Court on Defendant's Motion for Partial

Summary Judgment [41]. After due consideration, the Court enters the following

Order:

## I.    BACKGROUND[1]

On September 3, 2014, Plaintiff Frederick Luster filed a putative class

action lawsuit against First Premier Bank in this Court ("the First Action").

Luster v. First Premier Bank, No. 14-CV-02844-MHC (N.D. Ga. filed Sept. 3,

2014). The First Action alleged violations of the Telephone Consumer Protection

---

[1] All facts are construed in a light most favorable to Plaintiffs as the non-moving
parties.

Act, 47 U.S.C. § 227 ("TCPA"), in connection with certain calls First Premier Bank allegedly made to Plaintiff's cellular phone. Dkt. No. [41-4] ¶¶ 14-15.

On January 8, 2015, First Premier Bank made a Rule 68 offer of judgment (the "Offer") to Luster for $200,000.[2] Dkt. No. [41-5] ¶ 1. The Offer stated that any judgment entered in accordance with the Offer "is to be in complete settlement of any and all claims and allegations by Plaintiff against, implicating or involving First Premier, whether or not known, asserted or suspected by Plaintiff, and said judgment shall have no effect whatsoever except in settlement of those claims." Id. ¶ 7.

On January 16, 2015, Luster accepted the Offer. Dkt. No. [41-6]. The Clerk then entered judgment in accordance with the Offer. Dkt. No. [41-7]. That same day, Luster filed the instant putative class action against Defendant, Premier Bankcard. Dkt. No. [1].

Importantly, Premier Bankcard and First Premier Bank share common connections through United National Corporation. Specifically, First Premier Bank is chartered in South Dakota and owned by United National Corporation while Premier Bankcard is a South Dakota limited liability company whose sole

---

[2] A Rule 68 offer of judgment occurs when a defending party serves the opposing party "an offer to allow judgment on specified terms." FED. R. CIV. P. 68(a). If the opposing party accepts the offer, "[t]he clerk must then enter judgment." Id. If the opposing party rejects the offer and the judgment finally obtained is not more favorable than the unaccepted offer, the opposing party "must pay the costs incurred after the offer was made." FED. R. CIV. P. 68(d).

member is Premier Bankcard Holdings, LLC, whose sole member is United National Corporation. Dkt. No. [41-10] ¶¶ 6-7.

The entities are further connected because they provide services to each other relating to their respective business endeavors. Id. ¶ 10. For instance, Premier Bankcard markets and services credit card accounts issued by First Premier Bank, including making collection calls to account holders.[3] Id. ¶¶ 8-9. In this case, the calls Luster received concerned credit cards issued by First Premier Bank.[4] Id. ¶ 9.

Lastly, the entities are connected through their respective litigation decisions. Id. ¶ 16. Specifically, there is evidence that many of the same individuals who made litigation decisions in the First Action against First Premier Bank are also making the litigation decisions in this action against Premier Bankcard.[5] Id.

---

[3] Luster admits that Premier Bankcard makes collection calls to account holders but objects to the way in which Defendant presented this fact. Specifically, Luster believes this fact is immaterial because, according to deposition testimony, Premier Bankcard is not making the calls on behalf of First Premier Bank. Instead, the deposition testimony shows that the credit card accounts at issue are immediately sold to another related LLC, Premier Nevada, LLC. Dkt. No. [51-4] at 16. However, the Court has included it because it is relevant to Defendant's arguments.

[4] Luster admits this fact but objects to its relevance as, according to deposition testimony, all credit card accounts issued by First Premier Bank are bought by Premier Nevada, LLC. Dkt. No. [51-4] at 16. However, this does not change the underlying admitted fact that the credit card was issued by First Premier Bank.

[5] Luster objects to this fact. In deposition testimony, the Rule 30(b)(6) designee for Premier Bankcard testified that four people were involved in the litigation decisions in the First Action against First Premier Bank. Dkt. No. [51-4] at 9.

On October 14, 2015, Luster filed a Motion to Amend his Complaint to include a new plaintiff, Elizabeth Duke. Dkt. No. [31]. The Court approved the Motion and Duke was added as a plaintiff in the suit. Dkt. Nos. [35-36]. She asserts the same claims against Defendant as Plaintiff Luster. Dkt. No. [36] ¶¶ 35-42. Defendant now seeks summary judgment as to Plaintiff Luster's claims only. Dkt. No. [41].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

---

They were Miles Beacom, CEO of Premier Bankcard, Ron Houston, vice president of Premier Bankcard, Dana Dykehouse, CEO of First Premier Bank, and the Premier Bankcard designee James Harrenga. Id. When Harrenga was asked if any First Premier Bank officer was involved in this action, he answered no. According to Plaintiff, that means the same individuals have not been involved in the two cases. However, the deposition testimony only shows that Dana Dykehouse, the CEO of First Premier Bank, is not involved in this litigation, not that at least some of the same individuals from the First Action are now involved in this action. The Court finds that the facts show there has been at least some overlap between the decision makers in the First Action against First Premier Bank and this action against Premier Bankcard.

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.   DISCUSSION

Defendant contends that the Court must dismiss Luster's TCPA claims because they are barred by the doctrine of *res judicata*. *Res judicata* "bars the

filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (citing Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990)).

In analyzing this doctrine, the parties dispute whether state or federal law applies. Luster contends that state law informs the *res judicata* analysis while Defendant contends that federal law applies.

For its federal law argument, Defendant relies on CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309 (11th Cir. 2003). In that case, the Eleventh Circuit held that "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." CSX Transp., 327 F.3d at 1316 (11th Cir. 2003). See also Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499, 1503 (11th Cir. 1984) ("When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law."). In other words, if a prior litigation was resolved by a federal court, federal law controls the issue of *res judicata* in any subsequent federal case.

For his state law argument, Luster relies on Starship Enterprise of Atlanta, Inc. v. Coweta County, Ga., 708 F.3d 1243 (11th Cir. 2013), where the court applied state law in its preclusion analysis. However, as Defendant identified, that case is distinguishable because the prior litigation was resolved by a state

6

court decision, not a federal court decision. See Starship, 708 F.3d at 1245. Additionally, one of the cases cited in Starship to support its state law proposition also dealt with a state, rather than federal court decision. See Burr & Forman v. Blair, 470 F.3d 1019, 1033-34 (11th Cir. 2006) (determining if a state court order would have preclusive effect on a subsequent federal decision). On the other hand, the second case, N.A.A.C.P. v. Hunt, 891 F.2d 1555 (11th Cir. 1990), applied state law for its *res judicata* analysis even though the previous litigation came from federal court. Hunt, 891 F.2d 1560.

However, after Hunt, many courts have called that decision into question given the abundant Eleventh Circuit case law that requires a determination of federal law when assessing the preclusive effect of a federal decision. See CSX Transport., 327 F.3d at 1316; Citibank, 904 F.2d at 1501 ("[A] federal court must apply federal law to determine the preclusive effect of a prior federal court decision."); Empire Fire & Marine Ins. Co. v. J. Transport., Inc., 880 F.2d 1291, 1293 n. 2 (11th Cir. 1989) ("Although there are still some cases that say that when the federal court is exercising its diversity jurisdiction, the law of the state where it sits determines the preclusive effect of its judgment . . . this view is erroneous."); Gibbs v. Air Can., 810 F.2d 1529, 1535 (11th Cir. 1987) ("Federal law governs the res judicata effect of a prior judgment in a subsequent diversity case."); Precision Air Parts, 736 F.2d at 1503. See also Coachmen Indus., Inc. v. Royal Surplus Lines Ins. Co., No. 3:06-CV-959-J-HTS, 2007 WL 1837842 (M.D. Fla. June 26, 2007) (recognizing Hunt but following CSX Transport.); Jones v.

New Eng. Life Ins. Co., 974 F. Supp. 1476, 1480 (M.D. Ga. 1996) (recognizing Hunt but following Citibank); Kachler v. Taylor, 849 F. Supp. 1503, 1515 (M.D. Ala. 1994) (same). Because the majority of Eleventh Circuit cases require courts to apply federal law when determining the preclusive effect of a federal decision, the Court finds that federal law applies to the analysis.

As such, federal law precludes a claim if: (1) a final judgment on the merits was entered in the prior suit; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. Ragsdale, 193 F.3d at 1238. Defendant contends that each element is present in this case.

The parties do not dispute that a final judgment was entered in the First Action and that the judgment was rendered by a court of competent jurisdiction. However, the parties do dispute whether Defendant and First Premier Bank are in privity and whether the causes of action are the same in both cases.

### a. Privity

Generally speaking, for *res judicata* to bar a claim, the parties in the prior action must be identical to the parties in the new action. See Taylor v. Sturgell, 553 U.S. 880, 892-93 (2008). However, this general rule is subject to exceptions. Id. at 893. One such exception includes privity. See Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1472 (11th Cir. 1986).

"Privity describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should

bind or protect the nonparty." <u>Hart</u>, 787 F.2d at 1472 (citing <u>S.W. Airlines Co. v.</u> <u>Tex. Int'l Airlines</u>, 546 F.2d 84, 95 (5th Cir. 1977)) (internal quotations omitted). Privity between a party and nonparty exists "where the nonparty has succeeded to the party's interest in property, where the nonparty controlled the original suit, where the nonparty's interests were represented adequately by the party in the original suit, and where the party and nonparty have concurrent interest in the same property right." <u>Id.</u>

Defendant argues first that sister corporations, like Premier Bankcard and First Premier Bank, can be in privity if they share enough commonalities. As support, Defendant cites numerous cases where the courts found privity between sister entities with common ownership and common interests. <u>See</u> <u>Astron Indus.</u> <u>v. Chrysler Motors</u>, 405 F.2d 958, 960-61 (5th Cir. 1968) (finding privity between parent and subsidiary); <u>Gulf Power v. FCC</u>, 669 F.3d 320, 323 (D.C. Cir. 2012) (finding privity between sister entities); <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 19 (1st Cir. 2003) (finding privity regardless of whether the entities were parent and subsidiary or sister corporations); <u>Cent. Transport, Inc. v. Four Phase</u> <u>Sys., Inc.</u>, 936 F.2d 256, 260 n. 1 (6th Cir. 1990) (finding privity between three sister corporations owned by a common parent); <u>In re Teletronics Servs.</u>, 762 F.2d 185, 191-92 (2d Cir. 1985) (finding privity between several acquired companies).

In <u>Gulf Power</u>, the plaintiff, Gulf Power Co., sought review that an FCC order was arbitrary and capricious. <u>Gulf Power</u>, 669 F.3d at 322-23. The FCC

responded that, because the Eleventh Circuit had already rejected that argument in a prior case, <u>Alabama Power Co. v. FCC</u>, 311 F.3d 1357 (11th Cir. 2002), the plaintiff was estopped from litigating the issue a second time.[6]

Importantly, before the court could determine whether issue preclusion applied, it had to determine if Gulf Power was in privity with Alabama Power. <u>Gulf Power</u>, 669 F.3d at 323. The facts showed that both entities were wholly owned subsidiaries of a third company, Southern Company. <u>Id.</u> In finding privity between the entities the D.C. Circuit reasoned, "[t]here seems at most only a trivial difference between a case where the party sought to be barred is a parent of a corporate party in the first litigation, and one where the two parties are fellow wholly-owned subsidiaries." <u>Id.</u> Because the two related parties in the <u>Gulf Power</u> case "were under the common control and complete ownership of their parent entity," such privity was warranted. <u>Id.</u>

In <u>In re Colonial</u>, the First Circuit came to a similar conclusion. It found that, because the sister corporations shared a "common economic interest in attempting [to resolve the alleged debt]" they were sufficiently related for purposes of privity. <u>In re Colonial</u>, 324 F.3d at 19.

Luster ignores these cases and the notion that sister corporations can be in privity if they share common interests and ownership. Instead, he focuses exclusively on the idea that entities are only in privity if they are also alter egos of

---

[6] While <u>Gulf Power</u> dealt with issue preclusion rather than claim preclusion, the concept of privity is relevant in both instances.

one another. As support, Luster cites <u>Hart</u> where the Eleventh Circuit set forth a test for determining privity between parents and subsidiaries requiring that the companies be alter egos of one another. <u>Hart</u>, 787 F.2d at 1472 (citing <u>Dudley v. Smith</u>, 504 F.2d 979, 982 (5th Cir. 1974)). Here, Luster contends, Defendant has not shown that First Premier Bank and Premier Bankcard are alter egos.

However, as Defendant argues, the rule in <u>Hart</u> only contemplated parent/subsidiary relationships. <u>Id.</u> Looking at the language of the case, the court specifically said, "[p]rivity between *parent and subsidiary* corporations generally is governed by the rules that apply to shareholders and their corporations.[] In this circuit, stockholders are not in privity with their corporations unless they are found to be alter egos." <u>Id.</u> (emphasis added). Based on the court's reasoning, this rule is in place to bind a parent to litigation conducted by its subsidiary when the parent used its ownership interest in the subsidiary to essentially dominate the subsidiary's actions. <u>Id.</u>

Plaintiff does not explain to the Court why a rule, based on ownership interest, would apply to sister corporations that have no ownership interest in one another. While the Eleventh Circuit has not specifically dealt with this issue, nothing in <u>Hart</u> indicates to the Court that the alter ego rule applies to sister corporations. In creating the alter ego rule for parent/subsidiary relationships, the Eleventh Circuit looked to stockholder/corporation relationships, which are relationships between an owner (stockholder) and its property (corporation), and applied it to parent/subsidiary relationships which are also between an owner

(parent) and its property (subsidiary). This ownership relationship often allows the stockholder/parent to use the corporation/subsidiary as its alter ego.

This same type of ownership relationship would not exist between sister corporations which themselves are controlled by a common parent. If one sister corporation did have such an ownership interest, then a parent/subsidiary relationship would exist and the alter ego rule would necessarily apply. If the Court followed Luster's interpretation, then few, if any sister corporations could be in privity with one another because their lack of ownership interest. The Court finds the reasoning in Gulf Power and In re Colonial persuasive such that sister corporations can be in privity if they are sufficiently related.[7]

Defendant argues that First Premier Bank and Premier Bankcard are sufficiently related for numerous reasons. First, Defendant contends that both entities are owned by the same parent corporation, United National Corporation. Second, both entities work within the same overarching business enterprise surrounding credit cards issued by First Premier Bank. Third, the entities share services with each other where First Premier Bank employees provide services to

---

[7] Luster also argues that the entities lack privity because First Premier Bank has unique defenses not shared by Premier Bankcard. This argument relies on a broad principle of parent/subsidiary law that says a parent or subsidiary may be held liable for a claim even after the other has escaped liability for similar conduct if the first had unique defenses not available to the latter. See generally, Citibank, 904 F.2d at 1502. If, however, the issues and defenses are the same, issue or claim preclusion applies to bar subsequent litigation. Id.

As Defendant argues, this principle and Plaintiff's entire argument surrounding this principle are irrelevant because the entities here are not in a parent/subsidiary relationship. As such, the Court will not consider it.

Premier Bankcard and vice versa. According to Defendant, these services directly and substantially relate to each entity's business endeavors. Lastly, Defendant contends that decisions regarding the defense of the First Action were made by at least some of the same individuals directing the defense of this action. As such, Defendant contends that the entities should be treated the same for purposes of *res judicata*.[8]

The Court finds that the facts indicate the entities are sufficiently related through their common interests and control. See Gulf Power, 669 F.3d at 266 (finding privity when the entities were "under the common control of their parent entity."); In re Colonial, 324 F.3d at 19 (finding privity when the entities shared a common economic interest). For instance, as Defendant urged, Premier Bankcard and First Premier Bank are related through their common "master" United National Corporation. They are further related through their common economic interests arising from their shared business endeavors. Such commonalities directly led Premier Bankcard to take a strong leadership and decision-making role in the First Action for wrongful collections calls even though it was not a named party because, according to the facts, Premier Bankcard is the entity actually responsible for any and all collections calls related to First Premier Bank. The Court finds that these shared interests and actions

---

[8] Because Luster was under the mistaken belief that parent/subsidiary law controlled the question of privity, he did not directly respond to Defendant's argument. Under the Local Rule, the Court could deem the issue unopposed. See LR 7.1(B), NDGa.

demonstrate that the two entities are so interconnected that they are in privity for purposes of *res judicata*.

### b. Same Causes of Action

The next issue is whether the claims brought and adjudicated against First Premier Bank in the First Action are the same claims brought against Premier Bankcard in this action. In the Eleventh Circuit, courts follow the transactional approach to determine whether a case asserts the same cause of action as the previously litigated case. Baloco v. Drummond Co., Inc., 767 F.3d 1229, 1247 (11th Cir. 2014). Under this approach, "[i]f a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate as the former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Id. (quoting Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1293 (11th Cir. 2010)). Additionally, this approach applies not only to "the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact [which could have been raised in the prior case]." Id. (quoting Hunt, 891 F.2d at 1561) (alterations in original).

In arguing about prior adjudication, both parties contest whether the First Action ever considered the claims against Premier Bankcard. Specifically, Plaintiff contends that the First Action complaint never contemplated the claims while Defendant claims it did. Additionally, Plaintiff contends that, even if the

First Action complaint contemplated the claims, the Offer of Judgment did not such that they were never adjudicated.

Importantly, the parties have not argued to the Court whether, for the purposes of *res judicata*, the claims needed to be contemplated in both the First Action complaint and the Offer, in the Offer but not the complaint, or in the complaint but not the Offer. However, this question is immaterial as the Court finds that the claims were considered in both the complaint and the Offer.

### i. *First Action Complaint*

Luster argues that the First Action complaint and the Complaint in this action involve two separate sets of calls. The first set in the First Action, Luster contends, comprised of an unknown number of calls allegedly made by First Premier Bank or a third party "servicing or collection agency."[9] Dkt. No. [41-4] ¶ 28. Luster argues that the second set at issue in this case comprises of 646 distinct calls made by Premier Bankcard. Luster argues that nothing in the facts demonstrates that the 646 calls at issue here were ever included in the First Action complaint. In other words, Luster urges that the 646 calls made by Premier Bankcard are completely separate from the unknown number asserted in the First Action. Based on this alleged lack of overlap, Luster contends that he has not brought a claim against Defendant out of the same nucleus of operative facts as the First Action.

---

[9] The number is unknown because the parties did not engage in discovery before First Premier Bank made an offer of judgment.

Defendant rejects this argument, saying that the facts show there is only one set of phone calls alleged in both the First Action complaint and this Complaint. As support, Defendant cites deposition testimony in which Premier Bankcard's deposition designee, James Harrenga, concedes that all collections calls regarding First Premier Bank branded credit cards would be made by or through Premier Bankcard. Because the First Action complaint contemplated calls made by First Premier Bank *and* any other third party servicers without specifically excluding Premier Bankcard, the complaint must necessarily have contemplated the 646 calls made by Premier Bankcard.

This is further supported by the fact that the 646 calls at issue in this case occurred during the exact four-year period indicated in the First Action complaint. That is to say, the First Action complaint, filed on September 3, 2014, alleged that in the four years preceding the case, Luster received numerous telephone calls regarding First Premier Bank credit cards. Dkt. No. [41-4] ¶14. Therefore, the calls in the First Action began on at least September 3, 2010, and ended on or before September 3, 2014. The facts in this case indicate that the 646 calls at issue began December 13, 2010, and ended May 13, 2014. Dkt. No. [51-6] at 2.

Importantly, the First Action complaint does not differentiate between calls Luster received during that four-year period. Dkt. No. [41-4] ¶¶ 14-15. Instead, it discusses them as a single set. Id. Additionally, the complaint further seeks to recover "for each such violation" without differentiating between calls

made by First Premier Bank or calls made by third party services like Premier

Bankcard. Id. ¶ 45. This lack of differentiation tells the Court that Luster

intended to recover on all of the calls he received regarding First Premier credit

cards up to the time of filing, which would have included the 646 calls made by

Premier Bankcard.

### ii.  Offer of Judgment

Luster argues that, even if the complaint in the First Action contemplated

the alleged violations arising from the 646 calls in question, the Offer of

Judgment did not. Importantly, in construing the preclusive effect of an offer of

judgment, courts must look to the intent of the parties. See Norfolk S. Corp. v.

Chevron, U.S.A., Inc., 371 F.3d 1285, 1288-89 (11th Cir. 2004) (looking to the

intent of the parties in determining the preclusive effect of a consent judgment);

Balbirer v. Austin, 790 F.2d 1524, 1528 (11th Cir. 1986) (remanding case for

determination of the intent of parties regarding the preclusive effect of a consent

judgment).

Luster contends that the language of the Offer shows the parties intended

only to adjudicate alleged violations arising from calls allegedly made by First

Premier Bank such that the violations arising from the 646 calls Premier

Bankcard admits to having made were never adjudicated.[10] As support, Luster

highlights three phrases he claims limit the Offer's applicability.

---

[10] This argument is suspect on its own because the facts show that First Premier
Bank did not make *any* calls on its own behalf. Instead, all calls were made by or

First, Luster cites paragraph two of the Offer. It states: "First Premier is offering judgment in the amount of $200,000 which includes all damages relating to any alleged calls placed by First Premier to Plaintiff's cellular telephone number *plus all other damages he seeks in connection with his individual claims*." Dkt. No. [41-5] ¶ 2 (emphasis added). Luster believes this paragraph helps his argument because it specifically names First Premier Bank while failing to name any other entity. However, the italicized phrase demonstrates that the $200,000 offer was intended to cover not only damages arising from First Premier Bank's activity, but also any other damages sought "in connection with this individual claims." Id. Because his individual claims included violations arising from the 646 calls placed by Premier Bankcard, this language tells the Court that the Offer intended to cover those damages, too.

Luster next cites paragraph three. It states: "This judgment amount represents First Premier's total liability for any and all of Plaintiff's losses, claims, damages, interest *and any other amounts or expenses that may have been recoverable, or were potentially recoverable in this action*." Id. ¶ 3 (emphasis added). Luster contends that this language limits the Offer's applicability as it only specifically refers to First Premier Bank's liability. However, because violations arising from the 646 Premier Bankcard calls were "potentially

through Premier Bankcard. However, Luster's argument fails for other reasons discussed below.

recoverable" in the First Action, the italicized phrase indicates that the Offer intended to include them as well. Id.

Lastly, Luster points to paragraph seven, which states: "The judgment entered . . . is to be in complete settlement of any and all claims and allegations by Plaintiff against, *implicating or involving* First Premier, whether or not known, asserted or suspected by Plaintiff." Id. ¶ 7 (emphasis added). Luster argues that this phrase also limits the Offer just to claims against First Premier Bank. However, the language specifically states that the Offer is intended to settle not only claims brought against First Premier Bank, but claims even implicating or involving First Premier Bank. As the facts have shown, this action heavily involves First Premier Bank as the 646 calls in question revolve around credit cards issued by First Premier Bank. As discussed in the previous section, First Premier Bank and Premier Bankcard are inextricably linked through their shared business endeavors such that the two are in privity. Based on that fact, Luster cannot argue that claims brought against Premier Bankcard involving credit cards issued by First Premier Bank would not somehow involve First Premier Bank.

For those reasons, the Court finds that the Offer intended to encompass the claims in this case such that the claims in the First Action are identical to the claims in this action. Luster's action is thus barred by *res judicata*.[11]

---

[11] Luster's last argument claims that the Offer could not possibly have contemplated the violations arising from the 646 calls because, if they are viable,

## IV.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment [41]. All of Plaintiff Luster's claims are **DISMISSED**.

**IT IS SO ORDERED** this 6th day of June, 2016

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

---

the TCPA mandates an award of no less than $323,000. Yet, according to Luster, the Offer specifically said First Premier Bank believed Luster would likely receive less than $200,000 for all of his claims at trial. This, Luster argues, means the Offer was not considering the 646 calls made by Premier Bank.

However, the Court is not persuaded by this argument because it assumes First Premier Bank knew exactly how many calls were made to Luster when no discovery was conducted. Additionally, it is possible that First Premier Bank knew there were many hundreds of calls but did not necessarily believe Luster would prevail on each alleged violation. As such, the Court will not rely on the Offer amount as a way to determine which calls the Offer contemplated.